Snyder v. Findley.

*Leake* contended that though the witness had once been interested, the disability was now removed, and that the witness himself was competent to prove the disability to have terminated. *Buller* 284; *Abrahams* v. *Bunn*, 4 *Burr.* 2251.

*Stockton,* contra.

When once the interest of a witness is proved, he cannot be restored to his competency without producing a release. It is not sufficient that he has been satisfied. 2 *Atkyns* 15.

[48]          SNYDER v. FINDLEY.

1. A gave a note of C (knowing of his insolvency) to B, in payment of a debt. The transaction is fraudulent, and though B gives a receipt in full, the debt is not discharged.

2. If assignor of a note assure assignee that the drawer is a man of ability, and would pay the note, and on the faith of this assurance assignee accepts it in payment of a debt, and the drawer at the time is insolvent,

the receipt is vacated, and this whether the assignor knew, or did not know, of the falsity of his representations.

3. The question of reasonable time left with the jury.

4. Whether assigning a note amounts to a payment of a debt must depend on the contract; but if the note is lost by the laches of assignee, it is a payment.

This was an action of *indebt. assumpsit,* brought to recover £90, the price of two horses which Snyder had sold to Findley. The defendant pleaded *nil debet* and *non assumpsit,* and in support of his defence gave in evidence a receipt dated August 26th, 1783, by which Snyder acknowledged to have received a note of Bartholomew Harris for £70, in full of the balance due him on the sale of two horses, which note he was to " take at his own risk, and collect or lose the same without calling on Findley for the money."

The plaintiff then offered to prove that Harris, the drawer of the note assigned in payment of the debt, was insolvent at the time, that Findley knew him to be so, and nevertheless asserted the note was good, and that if it was sent within a certain specified time to Philadelphia it would be paid. He · further offered to prove that Harris had not been heard of in Philadelphia or in New Jersey subsequent to the assignment.

*Leake* and *Frelinghuysen* objected to this evidence, because :

1st. Its tendency was to alter a written instrument by parol evidence; to destroy a higher proof by evidence of an inferior nature. *Powell on Powers, pref.* 3, 4 ; *Meres* v. *Ansell,* 3 *Wils.* 275.

2d. The insolvency of Harris, as now alleged, was, if true, a matter equally within the cognizance of both parties. If the plaintiff had intended to reserve to himself any right to come upon the defendant, it was perfectly easy for him to have done so ; he has given, however, a full acquittance, which cannot be avoided by the concealment or false representation of any fact of which he should have previously informed himself. *Carter* v. *Boehm,* 3 *Burr.* 1905.

3d. Here a complete discharge from the debt is shown, and the receipt in full is not attempted to be denied. If there be fraud in the transaction, it may give a right to a new action, but cannot revive the old. The plaintiff has, in express terms, absolved the defendant from every kind of responsibility, and if this discharge has been obtained by fraudulent representa-[49]-tions or improper means, it furnishes ground for an action of deceit. It is to be presumed, from the very terms of the receipt, that Harris' ability was to be at risk of Snyder; he took all risks on himself.

*Stockton* and *Woodruff, contra.*—The contract appears to have been made two or three weeks before the acceptance of the note. The circumstances of the drawer were exclusively within the knowledge of the assignor, and if he represents him as solvent, his assertions ought to be founded in fact. To draw a bill when drawer has no effects in the hands of drawee is fraudulent. 1 *T. R.* 408; 2 *T. R.* 713. The case from Burrows proves no further than that a fact which is " a general topic of speculation " or a political event, need not be disclosed, because it is supposed to be equally within the cognizance of both parties, and because different individuals frequently deduce different inferences from the same fact. But in the same case Lord Mansfield says that parties are obliged to disclose " such facts as vary the nature of the contract, which one privately knows, and the other is ignorant of, and has no reason to suspect." Where a party makes a representation, and asserts a fact as actually existing, he assumes upon himself the risk, and if the assertion proves to be false, it is fraudulent. *Pawson* v. *Watson, Cowp.* 785; *Parke on Ins.* 231.

The evidence offered is not intended to vary a written agreement, but merely to show that it was fraudulently obtained. The legal effect of an instrument, worded as this receipt, will not be questioned; our object is to show that it was given under circumstances which render it of no validity. *Stratton* v. *Rastall*, 2 *T. R.* 366. A receipt is not to be put

upon the same footing with instruments solemnly executed; it is never more than *prima facie* evidence of a discharge.

Wherever there is either a *suppressio veri* or *suggestio falsi* the most solemn instruments will be invalidated. *Jervois* v. *Duke*, 1 *Vern.* 19; *Dent* v. *Buck*, 2 *Eq. Ca. Abr.* 481.

[50] *Leake*, in reply, cited *Price* v. *Neal*, 3 *Bur.* 1354.

KINSEY, C. J.    We are all of opinion the evidence is admissible.    In the case of *Collins* v. *Blanturn*, 2 *Wils.* 341, where a similar question arose, every argument which has been urged on this occasion was eagerly pressed, but unsuccessfully.    In the case of *Stratton* v. *Rastall*, which has been cited, it was permitted to show that although a receipt was signed by two executors, the money was received only by one.    It is contrary to every principle of law and equity to permit a man to shelter himself behind his own fraudulent acts.    It is the duty of a court of justice (as Wilmot, C. J., says) to brush away the cobwebs, and look at the truth of the case.

The evidence offered by the plaintiff is not to vary a written contract, but to show it was obtained by fraudulent means, and representations which altogether destroy its validity.

KINSEY, C. J., charged the jury as follows:

The question to be determined is whether the acquittance of the debt which has been offered in evidence by the defendant was obtained fairly, or under circumstances, which being considered by the law as fraudulent, render it invalid.    If fairly obtained it is unquestionably a bar; but if you should think it was procured by a misrepresentation of material facts, it is your duty to disregard it altogether.    Fraud vitiates all contracts—it renders them absolutely void, and can no more furnish a valid ground of defence than of action. (a)

(a) A receipt in full, is only *prima facie* evidence of a discharge, and is always open to inquiry.    *Knight* v. *Cole*, 1 *Eq. Ca. Ab.* 170; 1 *Pow. on Cont.* 391; *Stratton* v. *Rastall*, 2 *T. R.* 366; *Middleditch* v. *Sharland*, 5 *Ves., Jr.*, 87; *Fitch* v. *Sutton*, 5 *East* 232; *Ensign* v. *Webster*, 1 *Johns. Ca.* 145; *Harrison* v. *Close*, 2 *Johns. Rep.* 449; *Tobey* v. *Barber*, 5 *Johns.* 68; *Putnam* v. *Lewis*, 8 *Johns.* 389; *Thorne* v. *White*, 1 *Peters* 178; *Jackson* v. *White, Ibid.* 179.

Snyder v. Findley.

This is the general doctrine of the law, and having been previously expressed by the court appears to be fully acquiesced in. All that remains is to suggest a few observations and rules which may assist you in determining this question of fraud.

[51] If the defendant assured the plaintiff that Harris was a man of ability, sufficient to discharge his note, and the plaintiff, upon the faith of this representation, did accept the note in payment for the horses, and Harris at the time was insolvent, in such case the assurance is, in the eye of the law, fraudulent, and the acquittance thus obtained void. It is perfectly immaterial, so far as regards the question of law, whether Findley knew or did not know the falsity of the facts which he represented. So far as concerns the morality of the action, there is, unquestionably, a vast difference, but there is none in the law. *Bree* v. *Holbech, Dougl.* 654.

With regard to the question whether the plaintiff used due diligence in prosecuting this note, and endeavoring to procure satisfaction from Harris, the testimony is variant. It never has been settled in New Jersey what shall be considered as reasonable time so as to discharge the party liable over. Every case must rest upon its own basis, and you are to judge from the evidence before you whether the plaintiff has been guilty of any *laches*.

Another point was raised by the counsel. It has been contended that a note never can discharge a precedent debt, and therefore the defendant is not exonerated, supposing every fact of his case to be admitted. This is the general rule of the law; it must, however, commonly depend on the contract, and in this case the defendant claims an acquittance under the receipt in full. It is further to be observed, that if a creditor accepts a collateral satisfaction of this kind, and through his own negligence or omission the note becomes useless by the insolvency of the drawer, he must bear the consequences of his own neglect. See *Brower* v. *Jones*, 3 *Johns.* 230.

Verdict for plaintiff.

CITED *in Berry* v. *Berry*, 2 *Harr.* 442.